**No. 26-8014**

**IN THE**

# United States Court of Appeals

**FOR THE SEVENTH CIRCUIT**

ANDREW CORZO, ET AL.,

*Plaintiffs-Respondents,*

v.

CORNELL UNIVERSITY, ET AL.,

*Defendants-Petitioners.*

On Petition from the United States District Court
for the Northern District of Illinois, Judge Matthew F. Kennelly
(No. 1:22-cv-00125)

## RESPONSE IN OPPOSITION TO DEFENDANTS' PETITION FOR PERMISSION TO APPEAL UNDER FED. R. CIV. P 23(f)

Eric L. Cramer
BERGER MONTAGUE PC
1818 Market Street
Suite 3600
Philadelphia, PA 19103

Edward J. Normand
FREEDMAN NORMAND
FRIEDLAND LLP
155 E. 44th Street, Suite 915
New York, NY 10017

Steven F. Molo
*Counsel of Record*
Eugene A. Sokoloff
Lauren F. Dayton
Matthew E. Gold
MOLOLAMKEN LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 450-6700
smolo@mololamken.com

*Counsel for Plaintiffs-Respondents*

Richard Schwartz
BERGER MONTAGUE PC
110 N. Wacker Drive
Chicago, IL 60606

Robert E. Litan
BERGER MONTAGUE PC
1001 G Street, N.W.
Suite 400 East
Washington, D.C. 20001

Richard Cipolla
FREEDMAN NORMAND
FRIEDLAND LLP
155 E. 44th Street, Suite 915
New York, NY 10017

*Additional Counsel for Plaintiffs-Respondents*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-8014

Short Caption: Cornell University, et al. v. Andrew Corzo, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Andrew Corzo, et al.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
MoloLamken LLP, Berger Montague PC, Freedman Normand Friedland LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Steven F. Molo Date: 6/25/2026

Attorney's Printed Name: Steven F. Molo

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: 300 North LaSalle Street, Suite 5350
Chicago, IL 60654

Phone Number: 312.450.6700 Fax Number: 312.450.6701

E-Mail Address: smolo@mololamken.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-8014

Short Caption: Cornell University, et al. v. Andrew Corozo, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Andrew Corozo, et al.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
MoloLamken LLP, Berger Montague PC, Freedman Normand Friedland LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: [signature] Date: 6/25/2026

Attorney's Printed Name: Eric L. Cramer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 1818 Market Street, Suite 3600
Philadelphia, PA 19103

Phone Number: 215-875-3009 Fax Number: 215-875-4604

E-Mail Address: ecramer@bergermontague.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-8014

Short Caption: Cornell University, et al. v. Andrew Corozo, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Andrew Corozo, et al.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
MoloLamken LLP, Berger Montague PC, Freedman Normand Friedland LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Robert E. Litan Date: 6/25/2026

Attorney's Printed Name: Robert E. Litan

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 1001 G Street, NW, Suite 400 East

Washington, DC 20001

Phone Number: 785.576.2939 Fax Number:

E-Mail Address: rlitan@bergermontague.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-8014

Short Caption: Cornell University, et al. v. Andrew Corzo, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Andrew Corzo, et al.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
MoloLamken LLP, Berger Montague PC, Freedman Normand Friedland LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Lauren F. Dayton Date: 6/25/2026

Attorney's Printed Name: Lauren F. Dayton

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 300 North LaSalle Street, Suite 5350

Chicago, IL 60654

Phone Number: 312.450.6707 Fax Number: 312.450.6701

E-Mail Address: ldayton@mololamken.com

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-8014

Short Caption: Cornell University, et al. v. Andrew Corzo, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Andrew Corzo, et al.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
MoloLamken LLP, Berger Montague PC, Freedman Normand Friedland LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Matthew E. Gold Date: 6/25/2026

Attorney's Printed Name: Matthew E. Gold

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 300 North LaSalle Street, Suite 5350
Chicago, IL 60654

Phone Number: 312.450.6711 Fax Number: 312.450.6701

E-Mail Address: mgold@mololamken.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-8014

Short Caption: Cornell University, et al. v. Andrew Corzo, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Andrew Corzo, et al.

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
MoloLamken LLP, Berger Montague PC, Freedman Normand Friedland LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Eugene A. Sokoloff Date: 6/25/2026

Attorney's Printed Name: Eugene A. Sokoloff

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: 300 North LaSalle Street, Suite 5350
Chicago, IL 60654

Phone Number: 312-450-6718 Fax Number: 312.450.6701

E-Mail Address: esokoloff@mololamken.com

**TABLE OF CONTENTS**

Page

INTRODUCTION ..... 1

STATEMENT ..... 4

A. The Defendants Colluded To Limit Competition Over Financial Aid ..... 4

B. The Defendants' Collusion Inflated Prices, Harming the Class ..... 5

C. Procedural History ..... 5

1. The District Court Denies the Defendants' Motion To Exclude Dr. Singer's and Bulman's Opinions ..... 6

2. The District Court Denies the Defendants' Motion for Summary Judgment ..... 8

3. The District Court Grants the Plaintiffs' Motion for Class Certification ..... 9

REASONS TO DENY THE PETITION ..... 11

I. The District Court Correctly Concluded that the Plaintiffs Carried Their Burden To Show Predominance ..... 11

A. The District Court Performed the Required "Rigorous Analysis" ..... 12

B. The District Court Found that Dr. Singer's Models Did Not Assume Uniform Conduct or Force a Result ..... 13

C. There Is No "Inconsistency" Between Dr. Singer's Models and Plaintiffs' Theory of Liability ..... 14

II. The District Court Correctly Found that Dr. Singer Could Show that the Defendants' Conduct Injured Nearly All Class Members ..... 16

III. The District Court Correctly Found Class Counsel Adequate ..... 18

CONCLUSION ..... 21

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Arandell Corp. v. Xcel Energy Inc.*,
149 F.4th 883 (7th Cir. 2025) ..... 12, 15, 16, 17

*Asher v. Baxter Int'l Inc.*,
505 F.3d 736 (7th Cir. 2007) ..... 1, 12

*Howard v. Pollard*,
814 F.3d 476 (7th Cir. 2015) ..... 1, 16

*Kleen Prods. LLC v. Int'l Paper Co.*,
831 F.3d 919 (7th Cir. 2016) ..... 2, 10, 15

*In re Mercedes-Benz Anti-Trust Litig.*,
157 F. Supp. 2d 355 (D.N.J. 2001) ..... 18

*Messner v. Northshore Univ. HealthSystem*,
669 F.3d 802 (7th Cir. 2012) ..... 16

*Reliable Money Ord., Inc. v. McKnight Sales Co.*,
704 F.3d 489 (7th Cir. 2013) ..... 1, 13, 20

*Rynasko v. N.Y. Univ.*,
63 F.4th 186 (2d Cir. 2023) ..... 18

## STATUTES AND RULES

15 U.S.C. § 1 ..... 5

Improving America's Schools Act of 1994, Pub. L. No. 103-382,
108 Stat. 3518 (1994):

§ 568 ..... 4

§ 568(c)(6) ..... 9

Fed. R. Civ. P. 23 ..... 9, 12

Fed. R. Civ. P. 23(a) ..... 3, 10, 11, 19

Fed. R. Civ. P. 23(a)(4) ........ 2

Fed. R. Civ. P. 23(b)(3) ........ 2

Fed. R. Civ. P. 23(f) ........ 1, 11

Fed. R. Evid. 702 ........ 6, 10, 11, 12, 13

**OTHER AUTHORITIES**

Martin A. Asher *et al.*, *Losing the Forest for the Trees: On the Loss of Economic Efficiency and Equity in Federal Price-Fixing Class Actions*, 16 Va. L. & Bus. Rev. 293 (2022) ........ 17

## INTRODUCTION

This Court has cautioned that "Rule 23(f) is an exception" to the rule against piecemeal appeals that "must be used sparingly lest interlocutory review increase the time and expense required for litigation." *Asher v. Baxter Int'l Inc.*, 505 F.3d 736, 741 (7th Cir. 2007). The experienced district court faithfully followed the path charted by this Court's antitrust class-action cases. It held that the plaintiffs' broadly accepted statistical methodology was sufficient to establish predominance and to show class-wide injury. And it carefully balanced competing interests in arriving at a solution that ensures the class will be adequately represented.

The defendants' quibbles with the district court's detailed rulings present no "novel issue[s] of class-certification law" that could justify the disruption of an interlocutory appeal. *Howard v. Pollard*, 814 F.3d 476, 478 (7th Cir. 2015). Nor is this a case where certification threatens to "coerce a settlement." *Reliable Money Ord., Inc. v. McKnight Sales Co.*, 704 F.3d 489, 497 (7th Cir. 2013). Twelve of the seventeen defendants settled well before the class was certified. And, despite their handwringing in this Court, the district court found, "[b]ased on discussions" with the parties, that the remaining five "are unwilling to pay anything close to what earlier settling defendants did." A60-61. They have made clear they want to try this case. So do the plaintiffs. The petition should be denied.

Having defeated motions for summary judgment and to exclude certain expert testimony, the plaintiffs moved to certify a class of students who received aid

from the defendant institutions. The defendants disputed just two of the requirements for certification—that questions "common to class members predominate over" those "affecting only individual members," and that class counsel "adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4), (b)(3). The district court found that the plaintiffs had carried their burden to establish both. That carefully reasoned decision does not merit this Court's review.

Starting with predominance, the defendants urged that individual questions predominated because their conduct did not impact all members of the class in the same way. After considering hundreds of pages of briefing, exhibits, and expert testimony, the district court rejected that contention. Modeling by the plaintiffs' primary economist, Dr. Hal Singer, the court concluded, could show that the defendants' conduct had a "common impact" on the class—*irrespective* of any differences in the defendants' conduct or class members' circumstances. A10, A19-20. Under this Court's precedent, that was "'sufficient to support a finding of predominance on the issue of antitrust impact for certification under Rule 23(b)(3).'" *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 927 (7th Cir. 2016).

The court's analysis was anything but "perfunctory." Pet.2. The court addressed and rejected each of the defendants' objections in detail. Dr. Singer did *not* "assume[ ]" that the defendants engaged in "uniform conduct," the court found. R.1160 at 20-21. He appropriately "test[ed] *whether*" the defendants' conduct had class-wide impact using widely accepted statistical methods. *Id.* at 10, 21 (emphasis

added). Singer did *not* purport to find that the defendants overcharged each student by the same amount. He calculated the *average* overcharge attributable to the defendants' conduct before showing that this "'generalized'" effect "'impacted all or almost all Class Members.'" *Id.* at 12. And an *undisputed* analysis Singer performed in response to the defendants' critiques showed that at least 93% of class members had been injured, demolishing the defendants' contention that the class includes a "'great many'" uninjured members. Pet.3-4. Those record-intensive findings do not warrant further review.

Turning to adequacy, the district court found that one of the firms representing the plaintiffs had misled the court in connection with settlement-related fee applications, and that the others had gone along with those misstatements. The court acknowledged that this "candor problem" raised concerns about counsel's adequacy under Rule 23(a). A61. But it stressed that counsel's conduct had *not* harmed the class. A56-57. So, rather than hand the defendants a "windfall" by taking the extreme step of denying certification, the court allowed the firm in question to withdraw and the plaintiffs to retain MoloLamken LLP as new lead counsel, with final decision-making authority. A58, A61. Having conceded below that MoloLamken is adequate, May 26, 2026 Hr'g Tr. at 9:12-17, the defendants identify no abuse of discretion in that decision—let alone one warranting this Court's review.

The petition should be denied.

## STATEMENT

### A. The Defendants Colluded To Limit Competition Over Financial Aid

In 1998, the presidents of several leading colleges and universities formed what they called the "568 Presidents Group." R.1210 at 2-3.[1] The Group's members reached agreements to restrain competition over students' financial aid. Each 568 Group member, documents show, "'made a commitment'" to implement a "Consensus Approach" to financial aid. R.1210 at 6. That approach included a so-called "Consensus Methodology" for "determining a family's ability to pay" the cost of attending the member schools. *Id.* at 4-5.

Members understood that they could not be "more generous" than the Consensus Approach in determining how much a student could afford—an amount referred to as the "expected family contribution" to the cost of attendance, or EFC. *See* R.1210 at 2, 13. "'I think it was made clear to those wanting to participate in 568,'" one 568 Group member wrote in 2014, "'that they could NOT'" base aid decisions on an "'EFC that [wa]s lower than what was calculated using the [Consensus Approach].'" *Id.* at 13. Indeed, MIT's Dean of Admissions wrote,

[1] The group's name alluded to Section 568 of the Improving America's Schools Act of 1994, Pub. L. No. 103-382, 108 Stat. 3518 (1994), a provision that exempted certain forms of inter-collegiate cooperation on financial aid from antitrust scrutiny. The Group disbanded in 2022, when Congress failed to renew the exemption. R.1210 at 8.

"'When Harvard, Princeton, Yale, and Stanford started making their more serious financial aid enhancements, they had to leave the group.'" *Id.*

### B. The Defendants' Collusion Inflated Prices, Harming the Class

The purpose of the 568 Group's overlapping agreements, its members candidly acknowledged, was to prevent member schools from getting into "'bidding war[s] for students.'" R.1210 at 12. Without collusion, members worried, the "'marketplace'" risked "'instability,'" with schools competing over students "'using need-based aid as a major tool.'" *Id.*

The defendants' plan to suppress price competition worked. The plaintiffs' lead economic expert, Dr. Singer, found that the 568 Group's collusion inflated the average price of a college education for students on financial aid by $1,202 per student per year, or roughly 3%, R.1160 at 12—not 1.37%, as the defendants assert, at Pet.5. Another expert, Dr. Bulman, found that schools spent less out of their endowment returns on financial aid when they were in the Group than when they were not. R.1160 at 34.

### C. Procedural History

The plaintiffs filed this action in 2022, alleging that the defendants colluded to fix the price of attending their institutions in violation of § 1 of the Sherman Act. The district court denied the defendants' motions to dismiss, R.185, and the case proceeded to discovery. In a series of exhaustive decisions after the close of discovery, the district court denied the defendants' motion to exclude Drs. Singer's

and Bulman's opinions, denied the defendants' motion for summary judgment, and granted the plaintiffs' motion for class certification. *See* R.1160, R.1210, R.1275. Twelve of the seventeen defendants settled before the class certification decision. A trial against the remaining five is set to begin in November. R.923.

1. *The District Court Denies the Defendants' Motion To Exclude Dr. Singer's and Bulman's Opinions*

The defendants moved under Rule 702 to exclude Drs. Singer's and Bulman's opinions. After considering some 232 pages of briefing, 2,560 pages of exhibits, and an evidentiary hearing featuring testimony from both Singer and the defendants' expert, Dr. Hill, the district court rejected every one of the defendants' objections. As relevant here, the district court found that Singer had assessed the impact of membership in the 568 Group using a two-step approach that is "broadly accepted" in antitrust cases. R.1160 at 10.

At the first step, the court explained, Dr. Singer used a standard "before-after" regression model to determine what, if any, effect the defendants' conduct had on prices in the market for undergraduate programs at private universities ranked among the top twenty-five over the life of the 568 Group. R.1160 at 10, 30. This "impact regression" compared each defendant's aid and pricing during years when they were *in* the 568 Group to their prices and institutional aid in years they were *not*. R.1263 at 7:13-21:23; R.1160 at 20-21.

The district court rejected the defendants' argument that the impact regression impermissibly "assume[d]" that the defendants had engaged in "uniform conduct." R.1160 at 20-21. For one thing, the court observed, there is no *legal* requirement to show uniform conduct. "[T]hough all members" of an alleged conspiracy "must be shown to have adopted the conspiracy's goals," proof of a conspiracy does not require a showing that they all "d[id] the same thing to carry out those goals." *Id.* at 21. For another, as a *factual* matter, Dr. Singer's models did *not* "impose a finding of common impact"—they "test[ed] *whether*" the defendants' membership in the 568 Group impacted market prices. *Id.* at 21 (emphasis added).

At the second step, Dr. Singer assessed whether the generalized price effect shown by his impact regression affected the class. This "common shock" correlation analysis found that a drop in a defendant's expected institutional prices, or EIP, impacted the prices charged to students of all income levels. R.1160 at 12; R.1263 at 22:5-9. Singer complemented that analysis with another standard statistical methodology called "in-sample prediction" to identify individual class members who may have escaped injury. R.1160 at 12, 21-27; R.1263 at 22:23-30:9.

The district court rejected the defendants' objections to those analyses, too. In-sample regressions, the court explained, are a widely used "methodology in antitrust cases, and the econometrics literature reflects that this is an acceptable model for calculating antitrust impact." R.1160 at 27. Dr. Singer's in-sample regression was no different. It was *not*, as the defendants asserted, "designed to always reflect

a $1,202 overcharge from the impact regression." *Id.* at 22-23. In any event, the court found as a matter of fact that "Singer *addressed* defendants' concerns" with his principal in-sample model by running a separate in-sample model, called the "Yale Model," which confirmed "a high level of common impact." *Id.* at 26-27 (emphasis added).

2. *The District Court Denies the Defendants' Motion for Summary Judgment*

The district court likewise denied the defendants' motions for summary judgment. R.1210. The court concluded that the plaintiffs had presented sufficient evidence that the defendants had engaged in the alleged conspiracy, *id.* at 10-14, with market power in a relevant market, *id.* at 19-35.

Although not every member of the Group adopted every aspect of the Consensus Approach, the district court found that "[a]t a minimum, it is undisputed that all the [defendant] universities were members of the 568 Group and collaborated on devising common financial aid practices, which they all at least partially implemented." R.1210 at 12. "[T]here is enough evidence in the record," moreover, "for a jury reasonably to find that the 568 Group agreed on the Consensus Approach to avoid bidding wars and then adhered to it." *Id.*

The court found, too, that the plaintiffs had "produced sufficient evidence for a jury reasonably to find that each of the universities claiming the [568] exemption" to antitrust scrutiny did not qualify. R.1210 at 40; n.1 *supra*. Among other things,

the exception applied only to schools that admitted students "without regard to the financial circumstances of the student involved or the student's family." Pub. L. No. 103-382, § 568(c)(6), 108 Stat. 3518, 4061 (1994). Yet the evidence showed that *each* defendant privileged wealthy applicants. A Notre Dame administrator lamented one year that the school had "'allowed [the] high gifting or potential gifting'" of "'very low ranked admits'" to "'influence [admissions] choices.'" R.752-1 at 4. "'Sure hope the wealthy next year raise a few more smart kids!,'" he quipped. *Id.*

3. *The District Court Grants the Plaintiffs' Motion for Class Certification*

The plaintiffs moved to certify a class of students who had received financial aid from the defendants while those defendants were members of the 568 Group. The defendants opposed, challenging just two of Rule 23's requirements for certification—predominance and adequacy. *See* A7-8 (finding that the defendants waived all other objections). After considering some 229 pages of briefing, 1,148 pages of expert reports, and 4,086 pages of exhibits, the court concluded that the plaintiffs had carried their burden to satisfy both of those requirements. R.1275.

The court began by finding that the plaintiffs had met their burden to establish predominance. A20. The plaintiffs proposed a long list of common issues that predominated over any individualized questions. A17-19. The defendants

focused on one—whether the plaintiffs could show class-wide "impact." A19-20.[2] The plaintiffs invoked Dr. Singer's analyses and other evidence showing that the 568 Group's collusion led to a class-wide overcharge. A18. The defendants repeated the same arguments they had made in moving to exclude Singer's testimony under Rule 702. A19-20. Rather than repeat the extensive analysis it had devoted to those contentions just months earlier, the district court incorporated its prior decision, explaining that the defendants' arguments were unavailing "[f]or the reasons discussed in the Court's ruling on defendants' motion to exclude Singer's testimony[.]" A20.

The court next considered the adequacy of proposed class counsel. The court concluded that one of the firms representing the plaintiffs had misled the court in connection with settlement-related fee applications. A51-55. The plaintiffs' other counsel, the court found, had allowed those misstatements to go unchallenged. A57. The court stressed that those submissions had not prejudiced the class, A55-58, and that the court had no concern that counsel would not zealously represent the interests of the class going forward, A60-61.

Nevertheless, the court concluded there had been a breakdown of "trust" that raised doubts about whether "current class counsel," even with the firm in question

[2] In antitrust cases, proof of class-wide impact refers to proof showing that class members "suffered 'injuries that reflect the anticompetitive effect of either the [alleged antitrust] violation or the anticompetitive acts made possible by the violation.'" *Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 926 (7th Cir. 2016).

"out of the picture," were "adequate within the meaning of Rule 23(a)." A61. That "level of doubt" was "insufficient to require their removal entirely." *Id.* "Instead," the court concluded, "the appropriate measure—both to protect the class and avoid unfairly prejudicing it" was to permit the firm to withdraw and "to require bringing in new lead counsel outside the current group." *Id.* The court thus deferred decision on certification pending the selection of "new lead counsel." A61-62.

On June 1, 2026, the court approved the engagement of Steven Molo and MoloLamken LLP as lead counsel and certified the class. A73. Mr. Molo and his firm, the court found, "are unquestionably adequate" with a "stellar reputation of long standing" based on their extensive experience with "complex litigation, including class representation." A69-70. The defendants agreed. May 26, 2026 Hr'g Tr. at 9:12-17.

## REASONS TO DENY THE PETITION

### I. THE DISTRICT COURT CORRECTLY CONCLUDED THAT THE PLAINTIFFS CARRIED THEIR BURDEN TO SHOW PREDOMINANCE

The district court carefully scrutinized whether the plaintiffs had shown that they could prove that the defendants' conduct had a "common impact" on the class and concluded that they had. A18-20. Dr. Singer's models, the court found, used an approach "'broadly accepted'" as a method of proving class-wide injury. R.1160 at 10. While the plaintiffs *might* not succeed in proving common impact at trial, the court found no reason to think they *could* not. The defendants identify no abuse of

discretion in that decision—let alone one warranting the "exception[al]" relief of Rule 23(f) review. *Asher*, 505 F.3d at 741.

### A. The District Court Performed the Required "Rigorous Analysis"

The district court's predominance analysis drew on findings the court made in denying the defendants' Rule 702 motion to exclude Dr. Singer's testimony. *See, e.g.*, A18-20. But that did not mean, as the defendants claim (at Pet.15-16), that the court failed to address their experts' evidence or to resolve disputes over whether Singer's model was, in fact, capable of showing common impact.

Dr. Singer's ability to show class-wide impact was the central issue in the Rule 702 dispute. The court heard live testimony from both sides' experts, and its decision addressed the defendants' evidence in detail.[3] The court was not required to hold a *second* hearing or re-do its analysis when the defendants presented *the same arguments and evidence* in their objections to certification. A19-20; *compare* R.755 at 12-19 (Defs' Rule 702 brief), *with* R.789 (Defs' class cert. brief).

The defendants complain (at Pet.16) that the court's class-certification order "refrained from considering arguments that went to the 'weight'" of Dr. Singer's testimony. But a "district court is *not* required to resolve every expert dispute" on class certification. *Arandell Corp. v. Xcel Energy Inc.*, 149 F.4th 883, 894 (7th Cir.

---

[3] Although the defendants urge (at Pet.15) that they presented "expert testimony and record evidence" at class certification, they tellingly do not contend that evidence was new or different from what they presented on their motion to exclude Dr. Singer's opinions.

2025) (emphasis added). Indeed, a court is "neither required *nor permitted* at the class stage to resolve disputes on the merits unrelated to the decisions essential to Rule 23." *Id.* (emphasis added). The district court knew the difference. It resolved the essential disputes and left the rest for trial.

### B. The District Court Found that Dr. Singer's Models Did Not Assume Uniform Conduct or Force a Result

The defendants urge (at Pet.17) that their experts "demonstrated" that Dr. Singer's model could not show class-wide impact. The district court disagreed. The court did not merely hold that Singer's evidence was "admissible" despite the defendants' critiques—it *found* that those critiques were just plain *wrong*, R.1160 at 20-27, and incorporated those findings into its certification order, A20. The defendants do not even acknowledge those findings, let alone attempt to meet the clear-error standard necessary to disturb them on appeal. *See Reliable Money Ord.*, 704 F.3d at 498. Instead, the petition goes on for pages, without adding to the arguments about class-wide impact that the defendants made (and lost) below.[4]

Take the defendants' assertion (at Pet.17) that Dr. Singer's models "assumed uniform conduct" despite unrebutted evidence that the defendants' conduct varied. The district court *found* as a matter of *fact* that Singer's model *did not* assume

[4] The defendants' amici go on even longer—submitting a brief that is *a thousand words over* the limit for *party* briefs in a quixotic bid to relitigate the defendants' Rule 702 motion and introduce arguments far beyond the scope of the defendants' own petition. *See* Br. of Amicus Curiae Daniel Ramsey et al., Doc. 15.

uniform conduct or "impose a finding of common impact." R.1160 at 21. Rather, the court found, Singer appropriately "test[ed] *whether*" the defendants' conduct had class-wide impact—irrespective of any differences. *Id.* (emphasis added).

The district court likewise rejected, again as a matter of *fact*, the defendants' argument (at Pet.19) that Dr. Singer's in-sample model "*compelled*" the result it was testing for. "After a thorough review of Singer's in-sample regression and his reasons justifying it, including during the *Daubert* hearing (during which Singer testified)," the court was "persuaded that his methodology . . . *does not* force a result, as defendants contend." R.1160 at 23 (emphasis added).

The defendants protest (at Pet.20) that their expert, Lauren Stiroh, showed that students at several schools experienced no injury. But the district court considered Dr. Stiroh's testimony and found that Dr. Singer "*addressed* [her] concerns" by running an additional regression—the "Yale Model." R.1160 at 26-27 (emphasis added). That model and "numerous" other regressions Singer ran, the court found, "support[ed] his conclusion that the impact from the challenged conduct was shared across the class even after incorporating critiques from defendants' experts." *Id.* at 27.

### C. There Is No "Inconsistency" Between Dr. Singer's Models and Plaintiffs' Theory of Liability

The defendants' claims (at Pet.21-24) of inconsistencies between Dr. Singer's models and the plaintiffs' theories fare no better. The plaintiffs have argued all along that the defendants violated the Sherman Act by agreeing to suppress competition

over financial aid awards. R.1210 at 8. The district court found there is enough evidence to support a jury finding of just such an agreement—that "the 568 Group agreed on the Consensus Approach to avoid bidding wars and then adhered to it." R.1210 at 12. Singer's model—which measures the impact of membership in the 568 Group—dovetails perfectly with that proof. *See* pp. 13-14, *supra*.

Nor is there any inconsistency between Dr. Singer's focus on EIPs and the plaintiffs' allegations that the defendants agreed on methodologies for calculating students' "EFCs" (expected family contributions). As the defendants admit (at Pet.23), Singer found that the conspiracy materially inflated *both* EIPs *and* EFCs. And while defendants argue that only a part of the overcharge Singer calculated was attributable to changes in EFCs, that makes no difference. What matters for class certification is whether there is "proof common to all class members" that could show "they suffered 'injuries that reflect the anticompetitive effect'" of the defendants' collusion—not whether they were injured to the same extent. *Arandell*, 149 F.4th at 897; *Kleen Prods.*, 831 F.3d at 926.[5]

[5] The defendants argue (at Pet.23-24) that there was no agreement on how institutions would "package" aid—*i.e.*, how much they would offer in loans as opposed to grants. But the plaintiffs proffered evidence showing that the conspiracy is likely to have affected packaging and tuition pricing more generally. R.893 at 16-17, 38-39. Regardless, Dr. Singer's regression modeling and other analyses found artificially inflated EIPs across the class notwithstanding any differences in packaging.

## II. The District Court Correctly Found That Dr. Singer Could Show That The Defendants' Conduct Injured Nearly All Class Members

The district court did not "fail to address" the defendants' argument that the class has "'too many uninjured members,'" as the defendants claim. Pet.26. To the contrary, after evaluating the plaintiffs' evidence—and the defendants' attacks on it—the district court held that the plaintiffs could show impact "across the class." R.1160 at 20-21, 23-27; *see* pp. 12-13, *supra*. That decision does not warrant further review, either. This Court has already said "repeatedly," class certification "does not require proof that every class member was injured" or even that every transaction "was affected by the conspiracy." *Arandell*, 149 F.4th at 898; *see Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 823 (7th Cir. 2012) (the "possibility or indeed inevitability" of uninjured members "does not preclude class certification"). There is no "novel issue of class-certification law" here. *Howard*, 814 F.3d at 478.

Defendants assail Dr. Singer, but they never challenged his "Yale Model." That model, the district court found, showed that the defendants' collusion impacted 81% of "transactions"—that is, years in which a student received financial aid. R.1160 at 26. That does *not* mean, as defendants urge, that "19% of the students analyzed were uninjured." Pet.25. This Court made clear in *Arandell* that a "class member has a claim if *any* purchase during the class period was affected by the conspiracy." 149 F.4th at 898. The impact on "transactions" shown through the Yale

Model, Singer testified, translated to injury to *at least 93%* of the class. R.1263 at 27:2-4, 26:14-22. Indeed, Singer agreed that the Yale Model was "conservative and understates common impact." *Id.* at 27:5-7.[6]

This Court has cautioned that there is "no precise measure" for "a great many." *Arandell*, 149 F.4th at 898 (internal quotation marks omitted). "'Such determinations are a matter of degree, and will turn on the facts as they appear from case to case.'" *Id.* Neither the defendants nor their amici explain why, in *this* case, on *these* facts, the plaintiffs' evidence was insufficient to support certification.[7]

Amicus the Association of American Universities urges that certifying classes with uninjured members "inflate[s]" damages. Br. of Amicus Curiae Ass'n of Am. Univs. at 9-10, Doc. 16. But Dr. Singer's damages model is based on a regression. Including uninjured members in a regression "*does not alter the aggregate amount of damages*" because those uninjured members *reduce* the average overcharge. Martin A. Asher *et al.*, *Losing the Forest for the Trees: On the Loss of Economic*

---

[6] That one of the in-sample models Dr. Singer ran indicated that 35% of awards were unimpacted in a calendar year does not undermine common impact, either. Conservatively assuming that the average class member attends a defendant university for three years, the 35% statistic would mean that 96% of the class suffered harm on at least one transaction during the class period ([1]-[0.35 x 0.35 x 0.35]).

[7] Dr. Singer did not "concede[ ]" multiple uninjured class members. Pet.25. Just the opposite—Singer testified that *no* student "would have escaped injury." R.1263 at 30:16-19; *see also id.* at 75:23-76:6 (record evidence would allow factfinder "to infer that all or almost all class members were injured").

*Efficiency and Equity in Federal Price-Fixing Class Actions*, 16 Va. L. & Bus. Rev. 293, 322 (2022) (emphasis added). The problem is illusory.[8]

The district court was likewise correct to reject, at summary judgment, the defendants' argument (at Pet.25) that students whose parents paid their tuition "suffered no antitrust injury." "When the students in this case were admitted to the defendant universities," the court explained, "they *alone* incurred the legal obligation to pay tuition." R.1210 at 36 (emphasis added). "The parents, in contrast, had no contract or agreement with the universities." *Id.* "As far as the law is concerned, the parents must have gifted or loaned the money to the students." *Id.* (citing *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 195 & n.9 (2d Cir. 2023) (explaining that parents lack standing for this reason)); *see also In re Mercedes-Benz Anti-Trust Litig.*, 157 F. Supp. 2d 355, 366 (D.N.J. 2001) ("The source from which one obtains funds for a purchase does not attenuate the seller-to-buyer relationship, either as a matter of logic or commercial reality."). The defendants have no response. They neither acknowledge the district court's ruling nor engage with its reasoning.

## III. THE DISTRICT COURT CORRECTLY FOUND CLASS COUNSEL ADEQUATE

The district court carefully balanced the interests of the class to craft a remedy that resolved any concern regarding the candor of the plaintiffs' proposed

---

[8] There is no risk of ruin, regardless. After subtracting the value of the settlements entered to date, the remaining defendants' exposure is $1.74 billion shared five ways, or $348 million each. The defendants' endowments ranged (in 2022) between $3.2 and $24.7 billion. R.756-36 at 13 tbl. 3.

class counsel by permitting one of the firms to withdraw and approving the appointment of Steven Molo and MoloLamken LLP as new lead counsel with final decision-making authority. The defendants identify no abuse of discretion in that decision, which is consistent with precedent and practice. *See* Newberg & Rubenstein on Class Actions § 3:87 (collecting cases). It does not warrant this Court's review.

The defendants complain (at Pet.27-28) that the lawyers *formerly* representing the plaintiffs sought to benefit themselves at the class's expense. But the district court specifically found that counsel's actions "*did not* actually impact the award of fees and expenses" or otherwise harm the class. A56 (emphasis added). There was "nothing about this case" suggesting "that counsel have sold the class short thus far in connection with either litigation or settlement." A60. And it was "unlikely that counsels' lack of candor with the Court would impact their zealous prosecution of the case from a litigation standpoint." *Id.*

Nevertheless, out of an abundance of caution, the district court *deferred* certification pending the plaintiffs' selection of new lead counsel. A61-62. That solution, the court explained, balanced "competing concerns." *Id.* at A61. On one hand, the court had found that existing class counsel had "impaired" the court's trust, raising "doubt" as to whether they were "adequate within the meaning of Rule 23(a)." *Id.* On the other, denying class certification on that basis would give the defendants a "windfall" and penalize "the[ir] alleged victims." A58. Removing "*all*

the current attorneys" would amount to the same thing—"pos[ing] a very high risk of impairing the prosecution of the case going forward." A61 (emphasis added).

The defendants dispute none of that. Instead, the defendants urge (at Pet.28) that the district court had no discretion to certify the class once it determined that existing counsel engaged in "'misconduct.'" That is not the law. This Court has made clear that "[n]ot any ethical breach justifies the grave option of denying class certification." *Reliable Money Ord.*, 704 F.3d at 498. The question is whether "the misconduct jeopardizes the court's ability to reach a just and proper outcome in the case." *Id.* at 499. There is no suggestion of that here.

The defendants do not dispute the court's finding that existing counsel had zealously represented the class, or that it was "unlikely" that their lack of candor "would impact their zealous prosecution of the case" going forward. A60. And the defendants have conceded that the class's new lead counsel at MoloLamken are more than adequate—telling the court that "Molo Lamken is a very fine firm," that "[t]here is nothing to say derogatory about Steve Molo," and that the defendants would "love to try a case against him" given his "excellent reputation." May 26, 2026 Hr'g Tr. at 9:12-17. No interest could possibly be served by decertifying a class represented by undisputedly adequate counsel, backed by lawyers who have already achieved significant settlements on the class's behalf.

## CONCLUSION

The Court should deny the petition.

June 25, 2026
Chicago, IL

Respectfully submitted,

/s/ Steven F. Molo
Steven F. Molo
*Counsel of Record*
Eugene A. Sokoloff
Lauren F. Dayton
Matthew E. Gold
MOLOLAMKEN LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 450-6700
smolo@mololamken.com

Eric L. Cramer
BERGER MONTAGUE PC
1818 Market Street
Suite 3600
Philadelphia, PA 19103

Richard Schwartz
BERGER MONTAGUE PC
110 N. Wacker Drive
Chicago, IL 60606

Robert E. Litan
BERGER MONTAGUE PC
1001 G Street, N.W.
Suite 400 East
Washington, D.C. 20001

Edward J. Normand
Richard Cipolla
FREEDMAN NORMAND FRIEDLAND LLP
155 E. 44th Street, Suite 915
New York, NY 10017

*Counsel for Plaintiffs-Respondents*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 5(c)(1) because this brief contains 4,945 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and Cir. R. 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Century Expd BT 13-point font for the main text and 12-point font for the footnotes.

Dated: June 25, 2026
Chicago, IL

/s/ Steven F. Molo
Steven F. Molo